

FILED
JAN - 5 2007 *g*
JAN 5, 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DENNIS STOVER, an Individual, and )
DIANE STOVER, an Individual, )
                 )
      Plaintiffs, )
                 )
vs. )
                 )
CHI CARGO, INC., a Corporation, )
CENTRAL LEASING MANAGEMENT, Inc., )
a Corporation, SCI COMPANIES, INC., a )
Corporation and JOSEPH FARIAS, an Individual, )
                 )
      Defendants. )
                 )

**07CV0074**
**JUDGE PALLMEYER**
**MAG.JUDGE SCHENKIER**

**Trial By Jury Demanded**

### COMPLAINT

Plaintiffs DENNIS STOVER and DIANE STOVER, through their attorneys Michael J.

Merrick and Merrick Law Firm LLC, complaining against defendants CHI CARGO, INC.,

CENTRAL LEASING MANAGEMENT INC., SCI COMPANIES INC., and JOSEPH FARIAS,

state as follows:

### Jurisdiction & Venue

1.     Subject matter jurisdiction is premised on the federal question jurisdiction, 28

U.S.C. § 1331, as plaintiffs' claims under the Americans with Disabilities Act, 42 U.S.C. §

12102, *et seq.* ("ADA"), the Family and Medical Leave Act, 29 U.S.C. §§2612-2615 ("FMLA"),

and Section 510 of ERISA, arise under federal law.

2.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 (b) as

defendants reside in this judicial district and a substantial part of the events or omissions giving

rise to these claims occurred in this judicial district.

**Parties**

3.      Plaintiffs Dennis Stover and Diane Stover are husband and wife, citizens of the United States, and residents of the State of Illinois.

4.      Defendant Chi Cargo, Inc. ("Chi Cargo") operates a multi-modal transportation and shipping business in Elk Grove, Illinois.

5.      Defendant Joseph Farias is President of Chi Cargo.

6.      Defendant Central Leasing Management, Inc. ("CLM"), is an Illinois corporation with offices in Oak Brook, Illinois. CLM purports to be a professional employer organization and human resource consultant.

7.      Defendant SCI Companies, Inc., ("SCI"), purports to be a professional employer organization and provider of human resources consulting. Upon information and belief, SCI acquired CLM in or about 2005 and now operates out of what were CLM's Oak Brook, Illinois offices.

8.      As a result of acquiring CLM, SCI is liable for CLM's unlawful conduct alleged herein.

9.      Chi Cargo and CLM, and Chi Cargo and SCI after acquiring CLM, are joint employers of plaintiffs for purposes of the FMLA, ADA and ERISA.

**Common Allegations**

10.     Prior to 2003, plaintiffs owned and operated their own trucking business.

11.     At or about the end of 2002 and the beginning of 2003, plaintiffs met with defendant Farias and had discussions about merging plaintiffs' trucking business with Chi Cargo.

12.     In or about February 2003, plaintiffs and Chi Cargo entered into a contract.

2

13.     Under the contract, plaintiffs agreed to transfer their customers, certain truck drivers and dispatchers, and certain computers, software, office equipment, office furniture, and other property to Chi Cargo.

14.     In lieu of paying a lump sum purchase price for plaintiffs' customers and other assets, Chi Cargo agreed to employ and pay Dennis Stover an annual salary of $70,000, provide him with health insurance coverage at no cost to him, and pay him a $300 per month car allowance; and Chi Cargo agreed to employ and pay Diane Stover an annual salary of $40,000 and provide her with health insurance coverage at no cost to her.

15.     In or about February 2003, plaintiffs transferred their customers, drivers, dispatchers, and other assets to Chi Cargo.

16.     In or about March 2003, Dennis Stover became employed by Chi Cargo as Director of Customer Solutions and began receiving the salary, health insurance coverage and car allowance described above. Also in or about March 2003, Diane Stover became employed by Chi Cargo as Customer Services Representative and began receiving the salary and health insurance coverage described above.

17.     Dennis Stover has suffered from Type-II Diabetes since the middle 1980's for which he has received substantial and expensive medical care over the years.

18.     Dennis Stover's health began to deteriorate at or about the end of 2003 which required him to begin receiving more medical care.

19.     Contrary to their contract, in or about December 2003 Farias and Chi Cargo began deducting certain amounts from plaintiffs' paychecks purportedly to help cover health insurance premiums.

20.     In or about April 2004 Dennis Stover began receiving dialysis treatments.

3

21. Upon information and belief, in or about July 2004 Chi Cargo and CLM entered into a contract under which Chi Cargo leased employees from CLM. Chi Cargo and CLM became joint employers of their employees.

22. On or about May 5, 2005 Dennis Stover was called to the hospital for a kidney transplant. Diane Stover took personal time on the afternoon of May 5 to help her husband.

23. Dennis Stover received a kidney transplant on May 6, 2005.

24. On or about May 9, 2005 Diane Stover spoke to Farias about her husband's kidney transplant and asked him if she could do some of her work from home so she could care for her husband after his transplant surgery. Farias told her not to worry and that she could work from home, which she did.

25. Contrary to their contract, by a memorandum dated May 16, 2005 attached to Dennis Stover's paycheck Farias and Chi Cargo unilaterally changed the terms and conditions of Dennis Stover's employment by: discontinuing his salary and instead paying him a small commission on only three of the Stovers' approximately 30 customers; reducing his monthly car allowance to $200; advising him that Chi Cargo's premium contribution for his health insurance could change if present or future carriers raised premiums or decided not to provide group coverage; prohibiting him from attending any sales meetings unless accompanied by one of Farias' family members who were to have final approval of all customer pricing arrangements; assigning him additional responsibilities including maintaining employee Department of Transportation ("DOT") files and being responsible for DOT compliance, and maintaining the vehicle fleet and vehicle DOT files and being responsible for DOT compliance; and directing him to report to Farias' two sons, Beau Farias and Steve Farias, in addition to Joseph Farias himself.

4

26.     Also contrary to their contract, by a memorandum dated May 16, 2005 attached to
Diane Stover's paycheck Farias and Chi Cargo unilaterally changed the terms and conditions of
her employment by: discontinuing her salary and compensating her as an hourly employee;
requiring her to perform all work in the company office notwithstanding his previous agreement
to allow her to perform some work from home while she cared for her husband; requiring her to
provide cross training of all her office functions to a certain other employee; and directing her to
also report to Farias' two sons, Beau and Steve Farias, in addition to her previous supervisor.

27.     On or about May 25, 2005 Diane Stover complained to Farias that his unilateral
changes to the terms and conditions of her and her husband's employment violated their contract
and she asked him to abide to what they had agreed to in their contract. Defendants refused to do
so.

28.     On or about June 27, 2005 plaintiffs complained to defendants that defendants'
unilateral changing of the terms and conditions of plaintiffs' employment violated the ADA.
Plaintiffs also asked for an investigation and that defendants comply with the parties' contract.

29.     Defendants did not conduct an investigation, nor did they comply with the
contract.

30.     On or about July 22, 2005 plaintiffs filed Charges of Discrimination with the
United States Equal Employment Opportunity Commission ("EEOC") alleging disability
discrimination and retaliation.

31.     After plaintiffs began complaining about unlawful treatment, Farias and Chi
Cargo retaliated against Diane Stover by harassing her and creating a hostile work environment.

32.     Defendants constructively terminated Diane Stover on or about November 3,
2005.

5

33.     Defendants terminated Dennis Stover's employment on or about December 31, 2005.

34.     Contrary to their contract, Chi Cargo terminated the Stovers' employment and ceased paying them anything but has kept the Stovers' customers and continues to receive substantial revenue from those accounts.

35.     Plaintiffs filed amended Charges of Discrimination with the EEOC on or about February 23, 2006 alleging disability discrimination and retaliation.

36.     The EEOC issued Notice of Right to Sue letters to plaintiffs, copies of which are attached hereto as Exhibit A and fully incorporated herein by reference.

## COUNT I

## BREACH OF CONTRACT AGAINST CHI CARGO

37.     Plaintiffs and Chi Cargo entered into a valid and enforceable contract in or about February 2003.

38.     Plaintiffs fully performed their obligations under the contract.

39.     Chi Cargo breached the contract and the covenant of good faith and fair dealing implied therein by failing to pay plaintiffs their agreed upon salaries and other benefits and by terminating plaintiffs' employment while at the same time retaining plaintiffs' customers and all of the substantial revenue generated from them.

40.     As a direct and proximate result of Chi Cargo's breaches plaintiffs suffered damages.

## COUNT II

### UNJUST ENRICHMENT/QUASI-CONTRACT AGAINST CHI CARGO AND FARIAS

41. Plaintiffs incorporate by reference paragraphs 1 through 36 as though fully set forth in this Count II.

42. Chi Cargo and Farias have unjustly retained benefits to plaintiffs' detriment by failing to pay plaintiffs their agreed upon salaries and other benefits or any other compensation while at the same time retaining plaintiffs' customers and all of the substantial revenue generated from them.

43. Chi Cargo's and Farias' retention of those benefits violate the fundamental principles of justice, equity and good conscience and therefore the benefits must be reimbursed to plaintiffs.

## COUNT III

### BREACH OF FIDUCIARY DUTY AGAINST CHI CARGO AND FARIAS

44. Plaintiffs incorporate by reference paragraphs 1 through 36 as though fully set forth in this Count III.

45. A fiduciary relationship exists between plaintiffs and Chi Cargo and Farias.

46. Chi Cargo and Farias owed plaintiffs various fiduciary duties including fidelity, honesty and good faith in connection with defendants' dealings with plaintiffs and plaintiffs' customers and the revenue generated by those customers.

47. Chi Cargo and Farias breached their fiduciary duties by failing to pay plaintiffs their agreed upon salaries and other benefits or any other compensation while at the same time retaining plaintiffs' customers and all of the substantial revenue generated from them.

48.     As a direct and proximate result of Chi Cargo's breaches plaintiffs suffered

damages.

## COUNT IV

### TORTIOUS INTERFERENCE WITH CONTRACT AGAINST FARIAS

49.     Plaintiffs incorporate by reference paragraphs 1 through 40 as though fully set

forth in this Count IV.

50.     Defendant Farias had knowledge of plaintiffs' contract with Chi Cargo.

51.     Defendant Farias intentionally and without justification induced Chi Cargo to

breach or otherwise render impossible the performance of the contract.

52.     Chi Cargo did breach the contract due to defendant Farias' wrongful conduct

which proximately caused plaintiffs to suffer damages.

## COUNT V

### TORTIOUS INTERFERENCE WITH
### PROSPECTIVE ECONOMIC ADVANTAGE AGAINST FARIAS

53.     Plaintiffs incorporate by reference paragraphs 1 through 36 and 41 through 48 as

though fully set forth in this Count V.

54.     Plaintiffs had a reasonable expectation of continuing with their business

relationship with Chi Cargo and/or receiving a financial benefit from the revenue generated by

plaintiffs' customers.

55.     Defendant Farias had knowledge of plaintiffs' expectancy.

56.     Defendant Farias intentionally and without justification interfered with plaintiffs'

business relationships with Chi Cargo and plaintiffs' customers thereby preventing said

relationships from continuing.

8

57.     As a direct and proximate result of Farias' interference plaintiffs suffered

damages.

## COUNT VI

### DENNIS STOVER'S ADA CLAIMS AGAINST CHI CARGO, CLM & SCI

58.     Plaintiff Dennis Stover incorporates by reference paragraphs 1 through 36 as

though fully set forth in this Count VI.

59.     Dennis Stover is a qualified individual with a disability within the meaning of the

ADA.

60.     Defendants Chi Cargo, CLM and SCI were aware of his disability.

61.     Dennis Stover was qualified for his job.

62.     Said defendants discriminated against Dennis Stover because of his disability in

violation of the ADA by:

    A.      Failing to engage in the interactive process;

    B.      Failing to provide plaintiff with a reasonable accommodation(s);

    C.      Unilaterally changing the terms and conditions of his employment and
            ultimately terminating his employment; and

    D.      Retaliating against him for engaging in protected activity.

63.     As a direct and proximate result of said defendants' unlawful conduct plaintiff

Dennis Stover suffered damages.

## COUNT VII

### DIANE STOVER'S ADA CLAIMS AGAINST CHI CARGO, CLM & SCI

64.     Plaintiff Diane Stover incorporates by reference paragraphs 1 through 36 and 59

to 63 as though fully set forth in this Count VII.

9

65.     Defendants Chi Cargo, CLM and SCI were aware of Dennis Stover's disability and the fact that he was her husband.

66.     Said defendants discriminated against Diane Stover because of her relationship with Dennis Stover in retaliation against her for engaging in protected activity in violation of the ADA by unilaterally changing the terms and conditions of her employment and ultimately constructively terminating her employment.

67.     As a direct and proximate result of said defendants' unlawful conduct plaintiff Diane Stover suffered damages.

## COUNT VIII

## DENNIS STOVER'S FMLA CLAIMS AGAINST ALL DEFENDANTS

68.     Plaintiff Dennis Stover incorporates by reference paragraphs 1 through 36 and 59 to 63 as though fully set forth in this Count VIII.

69.     Plaintiff Dennis Stover was an eligible employee under the FMLA.

70.     Defendants are a covered employer under the FMLA.

71.     Defendants violated Dennis Stover's substantive FMLA rights by failing to reinstate him to his Director of Customer Solutions position, or an equivalent position with the same benefits and terms of employment, upon his attempt to return to work from his medical leave.

72.     Defendants also discriminated against Dennis Stover for exercising his rights under the FMLA by unilaterally changing the terms and conditions of his employment, failing to reinstate him to his position or an equivalent one, and ultimately terminating his employment.

73.     As a direct and proximate result of defendants' unlawful conduct plaintiff Dennis Stover suffered damages.

10

## COUNT IX

### DIANE STOVER'S FMLA CLAIMS AGAINST ALL DEFENDANTS

74. Plaintiff Diane Stover incorporates by reference paragraphs 1 through 36, 65 to 67, and 69 to 73 as though fully set forth in this Count IX.

75. Plaintiff Diane Stover was an eligible employee under the FMLA.

76. Defendants violated Diane Stover's substantive FMLA rights by failing to allow her to take intermittent leave to care for Dennis Stover.

77. Defendants also discriminated against Diane Stover for exercising her rights under the FMLA by unilaterally changing the terms and conditions of her employment and ultimately constructively terminating her employment.

78. As a direct and proximate result of defendants' unlawful conduct plaintiff Diane Stover suffered damages.

## COUNT X

### ERISA 510 CLAIM AGAINST CHI CARGO, CLM & SCI

79. Plaintiffs incorporate by reference paragraphs 1 through 78 as though fully set forth in this Count X.

80. Plaintiffs were members of defendants' group health insurance plan which was an ERISA plan.

81. Plaintiffs were qualified for their positions.

82. Defendants terminated plaintiffs' employment with the intent of depriving them of health insurance benefits.

83. As a direct and proximate result of defendants' unlawful conduct plaintiffs suffered damages.

11

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for judgment in their favor and against defendants for the following relief:

A.   Compensatory damages in an amount to be proven at trial;

B.   Punitive damages in an amount to be proven at trial;

C.   The equitable remedy that all revenue defendants received from plaintiffs' customers be placed in constructive trust and awarded to plaintiffs as restitution;

D.   Reinstatement to their prior positions of employment with full salary and benefits retroactive to their separation dates.

E.   A declaratory judgment that defendants violated plaintiffs' rights as alleged herein;

F.   An injunction enjoining defendants from engaging in any future acts of discrimination or retaliation against plaintiffs;

G.   Plaintiffs' reasonable attorneys' fees and costs incurred herein; and

H.   For such further relief that the Court may deem just and equitable.

## JURY DEMAND

Plaintiffs demand trial by jury on all issues herein.

DENNIS STOVER & DIANE STOVER

By: _____

Attorney For Plaintiffs

Michael J. Merrick
Merrick Law Firm LLC
150 North Michigan Ave., Suite 2700
Chicago, Illinois 60601
(312) 269-0200
Fax (312) 269-0800
merrick@merricklawfirm.com

EEOC Form 161-B (3/98)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To: **Dennis Stover**
**466 Dominion Court**
**Wood Dale, IL 60191**

From: **Chicago District Office - 440**
**500 West Madison St**
**Suite 2800**
**Chicago, IL 60661**

**CERTIFIED MAIL: 7001 1940 0003 8830 1274**

[ ] *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 210-2005-08373 | Amy Burkholder, Investigator | (312) 353-8906 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in a federal or state court WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*John P. Rowe*

Enclosures(s)

**John P. Rowe,**
**District Director**

10/12/06
*(Date Mailed)*

cc: **CHI CARGO, INC.**

**EXHIBIT A**

# CHARGE OF DISCRIMINATION

| | AGENCY | | CHARGE NUMBER |
|---|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | | FEPA | 8373 |
| | X | EEOC | Amended 210-2005-00734 |

Illinois Department of Human Rights _and EEOC_

_State or local Agency, if any_

| NAME (Indicate Mr., Ms., Mrs.) Mr. Dennis Stover | HOME TELEPHONE (Include Area Code) (847) (630) 616-9694 | |
|---|---|---|
| STREET ADDRESS CITY, STATE AND ZIP CODE 166 Dominion Court, Wood Dale, IL 60191 | | DATE OF BIRTH 7-21-56 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME Chicargo Inc. | NUMBER OF EMPLOYEES, MEMBERS 50+ | TELEPHONE (Include Area Code) (847) 593-9900 |
|---|---|---|
| STREET ADDRESS CITY, STATE AND ZIP CODE 2311 Toughy Ave. Elk Grove Village, IL 60007 | | COUNTY Cook |

| NAME Central Leasing Management, Inc./SCI Companies | TELEPHONE NUMBER (Include Area Code) (630) 928-4700 | |
|---|---|---|
| STREET ADDRESS CITY, STATE AND ZIP CODE 1420 Kensington Road, Suite 203 Oak Brook, IL 60523 | | COUNTY Dupage |

| CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es)) | DATE DISCRIMINATION TOOK PLACE |
|---|---|
| | EARLIEST (ADEA/EPA)  LATEST (ALL) |

| | RACE | | COLOR | | SEX | | RELIGION | | AGE |
|---|---|---|---|---|---|---|---|---|---|
| X | RETALIATION | | NATIONAL ORIGIN | X | DISABILITY | | OTHER (Specify) | | |

DATE DISCRIMINATION TOOK PLACE
12/1/04    12/23/05
12/31/05
CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

SEE ATTACHED SHEETS

RECEIVED EEOC

FEB 2 3 2006

CHICAGO DISTRICT OFFICE

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| Date 2/10/06    Charging Party (Signature) | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) |

EEOC FORM 5 (Test 10/94)

**Dennis Stover v. Chi Cargo Inc., & Central Leasing Management, Inc./SCI Companies, Inc., Amended Charge p. 2 of 4**

I.    A.    ISSUES/BASIS

1. I was employed by Central Leasing Management, n/k/a SCI Companies, Inc., and ChiCargo, a shipping company, as Director, Customer Solutions. I have diabetes. Since April, 2004, I received dialysis treatments three days per week. I worked partial days in the office on the days I received treatments on Mondays, Wednesdays and Fridays. I worked all day in the office on Tuesdays and Thursdays. In December, 2004, Respondents instructed me not to come into the office anymore on Tuesdays and Thursdays because of my "illness." They also took away most of my responsibilities and instead instructed me to recruit new owner-operators, all in violation of my employment agreement. Also in December, 2004, Respondents indicated to me that they planned to stop paying my wages because of my illness. I protested these actions in December, 2004.

On May 5, 2005, I was called to go to the hospital for a kidney transplant. I had the surgery the next day, May 6, 2005.

Attached to my next paycheck was a memo dated May 16, 2005 from the President of Chi Cargo, Inc. After mentioning my dialysis treatments and recovery from surgery, he stated that "[w]e need to try to keep our business operating and feel that in the future we can no longer afford to compensate you at the same levels that we have in the past because you will not be able to work a full schedule." Effective that day Respondents changed the terms and conditions of employment as follows:

(1) Severely reducing my compensation by taking away my salary and placing me on commissions on only a few accounts;

(2) Reducing my car allowance;

(3) Leaving my medical coverage unchanged "[u]nless present and future insurance providers raise our premiums or decide not to provide coverage to our group;"

(4) All sales meetings I attend must be attended by one of the President's family members (who are also employees); and

(5) I was assigned additional Department of Transportation administrative duties.

**Dennis Stover v. Chi Cargo Inc., & Central Leasing Management, Inc./SCI Companies, Inc., Amended Charge p. 3 of 4**

Diane Stover, my wife and also an employee, complained about these actions on my behalf to the President on May 25, 2005 and asked him to return the terms and conditions of my employment back to what we had agreed to in our employment agreement. Respondents have not done so.

By letter dated June 27, 2005, Diane Stover and I again complained that these actions violate the ADA. We asked for an investigation and restoration of my original terms and conditions of employment. Respondents did not respond.

On or about July 22, 2005, my wife and I filed our initial Charges of Discrimination with the EEOC.

After I complained about Respondents' unlawful actions and filed with the EEOC Respondents harassed my wife and retaliated against her creating a hostile work environment. Respondents constructively discharged her on or about November 3, 2005.

Respondents failed to meaningfully engage in the interactive process with me to return me to my position with or without a reasonable accommodation. They had already cleared out my desk and work area before discussions about any accommodations had even commenced. Respondents assigned my job duties to other employees and refused to allow me to return to my position.

Respondents terminated my employment on or about December 31, 2005.

B. PRIMA FACIE ALLEGATIONS

1. I am a qualified individual with a disability within the meaning of the ADA.

2. Respondents were aware of my disability/perceived disability since at least April, 2004.

**Dennis Stover v. Chi Cargo Inc., & Central Leasing Management, Inc./SCI Companies, Inc., Amended Charge p. 4 of 4**

3. Respondents committed the following violations of the ADA:

    (a) They failed to engage in the interactive process or accommodate my known disability/perceived disability;

    (b) They discriminated against me because of my known disability/perceived disability by changing the terms and conditions of my employment and terminating my employment; and

    (c) They retaliated against me for complaining about their discriminatory treatment and filing with the EEOC by changing the terms and conditions of my employment and terminating my employment.

EEOC Form 161-B (3/98)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To: **Diane Stover**<br>**466 Dominion Court**<br>**Wood Dale, IL 60191** | From: **Chicago District Office - 440**<br>**500 West Madison St**<br>**Suite 2800**<br>**Chicago, IL 60661** |

**CERTIFIED MAIL: 7001 1940 0003 8830 1274**

☐ *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **210-2005-08374** | **Amy Burkholder,**<br>**Investigator** | **(312) 353-8906** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

☒ More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*John P. Rowe*

**John P. Rowe,**
**District Director**

10/12/06
*(Date Mailed)*

Enclosures(s)

cc: **CHI CARGO, INC.**

# CHARGE OF DISCRIMINATION

| | AGENCY | CHARGE NUMBER |
|---|---|---|

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| | FEPA | |
|---|---|---|
| X | EEOC | Amended 210-2005-08374 |

| Illinois Department of Human Rights | and EEOC |
|---|---|

_State or local Agency, if any_

| NAME(indicate Mr., Ms., Mrs.) Diane Stover | HOME TELEPHONE (include Area Code) (630) 616-9694 |
|---|---|

| STREET ADDRESS  CITY, STATE AND ZIP CODE 466 Dominion Court, Wood Dale, IL 60191 | DATE OF BIRTH 9/20/45 |
|---|---|

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME Chicargo Inc. | NUMBER OF EMPLOYEES, MEMBERS 50+ | TELEPHONE (include Area Code) (847) 593-9900 |
|---|---|---|

| STREET ADDRESS  CITY, STATE AND ZIP CODE 2311 Toughy Ave., Elk Grove Village, IL 60007 | COUNTY Cook |
|---|---|

| NAME Central Leasing Management Inc./SCI Companies | TELEPHONE NUMBER (include Area Code) (630) 928-4700 |
|---|---|

| STREET ADDRESS  CITY, STATE AND ZIP CODE 1420 Kensington Road, Ste. 203 Oakbrook, IL 60523 | COUNTY Dupage |
|---|---|

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

| | RACE | | COLOR | | SEX | | RELIGION | | AGE |
|---|---|---|---|---|---|---|---|---|---|
| X | RETALIATION | | NATIONAL ORIGIN | X | DISABILITY | | OTHER (Specify) | | |

| DATE DISCRIMINATION TOOK PLACE | |
|---|---|
| EARLIEST (ADEA/EPA) | LATEST (ALL) |
| 12/1/04 | XX/XX/XXX |
| | 11/3/05 |

CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

SEE ATTACHED SHEETS

RECEIVED EEOC

FEB 23 2006

CHICAGO DISTRICT OFFICE

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their proceedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I delcare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| 2/10/06 _Diane Stover_ Date  Charging Party (Signature) | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) |

EEOC FORM 5 (Test 10/94)

**Diane Stover v. Chi Cargo Inc., & Central Leasing Management, Inc./SCI Companies, Inc., Amended Charge p. 2 of 4**

I. A. ISSUES/BASIS

    1.  I was employed by Central Leasing Management, n/k/a SCI Companies, Inc., and ChiCargo, a shipping company, as Customer Services Representative. My husband, Dennis Stover, was also employed by Respondents as Director, Customer Solutions. He has diabetes. Since April, 2004, he received dialysis treatments three days per week. He worked partial days in the office on the days he received treatments on Mondays, Wednesdays and Fridays. He worked all day in the office on Tuesdays and Thursdays. In December, 2004, Respondents instructed him not to come into the office anymore on Tuesdays and Thursdays because of his "illness." They also took away most of his responsibilities and instead instructed him to recruit new owner-operators, all in violation of his employment agreement. Also in December, 2004, Respondents indicated to him that they planned to stop paying his wages because of his illness. He protested these actions in December, 2004.

    On May 5, 2005, my husband was called to go to the hospital for a kidney transplant. I took time off work the afternoon of May 5, 2005, to help my husband. He had the surgery the next day, May 6, 2005.

    On May 9 or 10, 2005, I talked to the President of Chi Cargo about my husband's kidney transplant. I asked him if I could do some of my work from home so I could be available for my husband's care after surgery. He told me not to worry and said I could work from home. I commenced working from home and everything seemed fine.

    However, attached to my next paycheck was a memo dated May 16, 2005 from the President of Chi Cargo, Inc. After mentioning my husband's "medical issues" and recovery, he stated that the company had "reviewed and discussed Dennis' medical issues" and "[w]e are concerned about the future and his after care requirements. You will most likely be required to spend a lot of time with Dennis and we understand this." He also said "[t]hus being the case, we feel that we need to change your job to an hourly basis." He also said all of my work needed to be performed in the office on Monday through Friday. He said I would be given a time card to record my hours. He also said, "[c]ontrary to what we discussed earlier, we wish for any/all work done on behalf of the company to be done in the office during regular working hours . . . ." He also said I would have to train another employee to perform all of my job duties. I complained to my immediate supervisor that these changes were wrong and that I could

**Diane Stover v. Chi Cargo Inc., & Central Leasing Management, Inc./SCI Companies, Inc., Amended Charge p. 3 of 4**

not accept them.

Also attached to my husband's paycheck was a memo dated May 16, 2005 from the President of Chi Cargo, Inc. After mentioning my husband's dialysis treatments and recovery from surgery, the President stated that "[w]e need to try to keep our business operating and feel that in the future we can no longer afford to compensate you at the same levels that we have in the past because you will not be able to work a full schedule." Effective that day Respondents changed the terms and conditions of my husband's employment as follows:

(1) Severely reducing his compensation by taking away his salary and placing him on commissions on only a few accounts;

(2) Reducing his car allowance;

(3) Leaving his medical coverage unchanged "[u]nless present and future insurance providers raise our premiums or decide not to provide coverage to our group;"

(4) All sales meetings he attend must be attended by one of the President's family members (who are also employees); and

(5) He was assigned additional Department of Transportation administrative duties.

I complained about these actions on behalf of myself and my husband to the President on May 25, 2005 and asked him to return the terms and conditions of our employment back to what we had agreed to in our employment agreement. Respondents did not do so.

By letter dated June 27, 2005, my husband and I again complained that these actions violate the ADA. We asked for an investigation and restoration of our original terms and conditions of employment. Respondents did not respond.

On or about July 22, 2005, my husband and I filed our initial Charges of Discrimination with the EEOC.

After I complained about Respondents' unlawful actions and filed with the EEOC Respondents harassed me and retaliated against me creating a hostile work environment. Respondents constructively discharged me on or about November 3, 2005.

**Diane Stover v. Chi Cargo Inc., & Central Leasing Management, Inc./SCI Companies, Inc., Amended Charge p. 4 of 4**

B.     PRIMA FACIE ALLEGATIONS

    1. My husband is a qualified individual with a disability within the meaning of the ADA.

    2. Respondents were aware of his disability/perceived disability since at least April, 2004.

    3. With respect to my husband, Respondents committed the following violations of the ADA:

        (a) They failed to engage in the interactive process or accommodate his known disability/perceived disability;

        (b) They discriminated against him because of his known disability/perceived disability by changing the terms and conditions of his employment including terminating his employment; and

        (c) They retaliated against him for complaining about their discriminatory treatment including terminating his employment.

    4. Respondents discriminated against me because of my relationship with my husband and in retaliation after I complained and filed with the EEOC in violation of the ADA by:

        (a) Changing the terms and conditions of my employment including reducing my compensation and causing my constructive discharge; and

        (b) Retaliating against me for complaining about their discriminatory treatment of me and my husband and filing with the EEOC, by changing the terms and conditions of my employment and causing my constructive discharge.